Good afternoon, Your Honor, and may it please the Court. Rory O'Sullivan on behalf of the tenants. I would like to reserve two minutes for rebuttal. We are asking this Court to rule that due process means that tenants have a right to adequate notice in a hearing before they are evicted from their home. Currently before the Court are issues of standing and mootness, both of which call into question Article III jurisdiction. If the Court finds in favor of the Sheriff on either of these issues, then the result would be a remand to State Court. The language of 28 U.S.C. Section 1447C is mandatory. When a case that's been removed is determined to lack Article III jurisdiction, the case shall be remanded to State Court. Didn't we decide expanding the show already? Yes, Your Honor. This Court has already resolved standing, and the tenants clearly do have standing. They have a concrete and particularized injury, which is loss of their home, which was imminent. They were subject to an unexpired writ of restitution that is redressable. If the statute is found unconstitutional, the writ would be void. Why should we decide anything other than we already decided it? I agree, Your Honor, that this case should be decided the same as it was decided by the Ninth Circuit in 2018. Tenants do, in fact, have standing. But I think if we agree with you on standing, and I suppose also mootness, we issued the supplemental order asking you to be prepared to address the jurisdictional question. If we say that you have standing and it's not moot, why is it appropriate to do anything other than remand to the District Court, because there isn't a final determination on the merits? Yes, Your Honor. I believe Judge Berzon's decision in Groover v. Lessman Fisheries from 2007 actually articulated the case law on this issue the best. What Judge Berzon determined in footnote 4 of that case was that the appellate court has discretionary jurisdiction to consider other... Yes, that's true. So I think we slightly misspoke when we suggested it was jurisdictional. But on the other hand, have we ever, that you know of, had an instance in which the issue was standing as opposed... and we actually reached the merits of a summary judgment at that point? What I did find was a case where the court considered a previous summary judgment order on a subsequent summary judgment order. That case was Jones-Hamilton v. Beazer. I'm not aware of a case where the court, on a standing issue, determined that the case did have standing and then went back to find... Went on to... Yeah, and then went on to rule on that. Because although technically all the earlier orders merge into a final judgment, in fact, there's something discomforting about saying that a denial of summary judgment merges into a standing rule. Yes, Your Honor, except that in this case, I think the primary... There's a couple of issues before the court. One is a matter of judicial efficiency. Another is a matter of whether or not the issues have been fully briefed. At this point, the summary judgment issues were fully briefed before the district court. They've been fully briefed before the Ninth Circuit. So at this point, it's at your discretion as to whether or not to consider the merits issues. Why was it appropriate for the district court to consider the merits? I mean, having determined that it lacked jurisdiction, I mean, arguably incorrectly, but it determined that it lacked jurisdiction, how could it go on to consider your summary judgment motion one way or the other at that point? It's unclear why or how the district court decided to do that. It's possible that because the district court was ruling that we don't have standing when this court had already found that we have standing, the district judge, in fact, wanted to make a ruling on the merits, specifically so that this court would have an opportunity to consider the merits. I think the district court judge may be ready to not have to deal with this case any longer. I mean, the next thing is there is a mootness claim, and without suggesting that the case is moot, which it might be or probably it's not, at least it's changed. Yes, Your Honor, that's absolutely true. So the primary mootness issue is— And having changed is yet another reason why we shouldn't be addressing the summary judgment motion, because the summary judgment motion has somewhat morphed since you decided it. So I would dispute that, Your Honor. So the primary mootness issue before this court is whether amendments to the Residential Landlord-Tenant Act moot the tenant's claims. But the reality is that Section 375 is unconstitutional for the same reasons it was unconstitutional in 2016. Now, the sheriff was unable to cite to any cases in which a constitutional claim has been determined to be moot when the underlying statute that's being challenged has not been amended or repealed. Now, it certainly is— Are you talking just about the notice provision? So— In my opinion, the notice provision hasn't been changed, but some of the procedures once the writ issues have been changed. There were several changes made by amendments in 2019. All those changes were briefed before the court, and in fact, the lower court found that those changes did not moot the tenant's claims. And we believe in that case appropriately. Now, it is appropriate when— But that was my point. My point was— Well, first of all, at the time he cited the case, the second time, had all the changes already occurred? Yeah. All the cases that were fully briefed had already occurred. Now, the sheriff filed a supplemental letter two days ago, I think. Three days ago. Raising an issue regarding a temporary order. We don't believe that that moots the case either because the order by its nature is temporary. The issue before the court is whether amendments to the Residential Landlord-Tenant Act moot the case, and those amendments were before the district court, when the district court made its determination that, in fact, the tenant's claims are not moot. I guess you're agreeing that to evaluate the constitutional claims that your clients are bringing, somebody is going to need to evaluate them against the law as it exists today. Now, maybe some of these changes in the law don't affect your claims. Maybe they do. Whatever the answer is, that's the analysis that will need to be undertaken. Is that your position? Yes, Your Honor. I think it's important at this point to understand—it's actually part of the mootness analysis— to understand why the changes that were made in 2019, in fact, don't moot the tenant's claims. There are two bases that tenants raise for arguing that the statutes are unconstitutional under the 14th Amendment due process clause. First, the notice is improper, and second, the statute fails the Matthews v. Eldridge due process test. The notice that tenants receive gives tenants two options. They must either pay money into the court registry or file a declaration under penalty of perjury, arguing that they don't owe the rent. Now, the problem with that is that there are many reasons other than whether or not the tenant owes the rent that would prevent an eviction. Those reasons are well briefed in the National Housing Law Project's amicus brief, and the plaintiffs in this specific case had several reasons. First, they had potential offsets, which they attempted to articulate in their letters to the court. They also had potential reasonable accommodation claims. Yet they were unable to bring those claims prior to the writ being issued because of this statute. The statute also has notice issues because it doesn't provide any information to the tenant about how they can go about obtaining a hearing. This is similar to the Memphis light, gas, and water case in which there is simply no way that a tenant can be on notice of how to get a hearing. The statute itself doesn't provide information about how a tenant can get a hearing. The entire Residential Landlord-Tenant Act doesn't inform a tenant how they would go about getting a hearing. The statute is also unconstitutional under the Matthews v. Eldridge test. Matthews v. Eldridge provides a three-prong test. The first prong is... The district court said that there needed to be a hearing about that. I mean, an evidentiary hearing. Why isn't he right about that? There are certain elements of the Matthews test that you rely on factual demonstrations from. Your Honor, there's simply no dispute of material facts. The vast majority of evictions in Washington state are carried out under a process that's in Section 370 of the Residential Landlord-Tenant Act. In all those situations, tenants have a right to a hearing. All that we're asking is the very limited situations under Section 375, which can only be used for non-payment of rent, that tenants get the same hearing that they get under 370. For example, for the risk of erroneous determinations, there could be a significant difference in that regard between people who are evicted for not paying rent and people who are evicted for other reasons. Yes, Your Honor. I think in terms of the... Actually, maybe I don't understand your question. Can you repeat that? My question is whether you need a hearing on that factual determination on that question of whether there is a risk of erroneous determination with regard to people in this category. So because there are no disputed issues of material fact and because the evidence submitted pursuant to the declarations of the plaintiffs in this case demonstrate that they were erroneously deprived, I don't think that there is an evidentiary issue. There's simply no disputed issues of material fact. This is a facial challenge to Section 375, and the questions really are all legal questions. And again, under the Matthews test, the right of issue, we're talking about the right to remain in someone's home. The risk of erroneous deprivation I think is established by the briefing that we've articulated numerous situations in which tenants are erroneously deprived of their home because they didn't have an opportunity to bring a claim for an offset. They didn't have an opportunity to bring a claim for reasonable accommodation. What is the status of your clients in all this? I mean, your clients received notice, but they were never ultimately evicted, and are they still in the same apartment? They are not in the same apartment, Your Honor. And just to be clear, when this case was before the Ninth Circuit in 2018, the panel in that case found that while our clients' claims are technically moot, they fit the exception to mootness, which is capable of repetition yet evading review. So again, this court has the opportunity to resolve that issue. And again, the administrative burden is under the Matthews test. What opportunity are you referring to? I mean, we're bound by that decision. We're bound by the standing decision that seems to resolve this issue. Yes, Your Honor. I would agree. And I believe I have less than two minutes, so I'd like to reserve the rest of the time unless you have a follow-up question. Thank you. Mr. Hackett. May it please the Court? David Hackett, Senior Deputy Prosecutor representing Sheriff Czajnik. We do believe there are two dispositive issues, including the standing issue and the mootness issue. I'd like to first turn to the standing issue and address the Court's question about whether this was decided in the 2018 appeal. And we do not believe it was decided in the 2018 appeal because by the very terms of that decision, the standing holding was based on the allegations put forward by plaintiff. Now, as the Court's aware, as you proceed through a lawsuit, your proof with regard to standing has to evolve beyond the complaint into actual proof of standing. But the fact that the issue of the stay was something that the prior panel was plainly aware of, it was referenced in the opinion. So this seems like a very aggressive position when we already have the prior decision in this very case. I would respectfully submit, Your Honor, that before the District Court in the prior case, we had submitted the record showing the stay. The District Court refused to consider that. Showing the what? You submitted the record showing what? Showing the stay, showing that they were never evicted. We did that in the District Court, and the District Court refused to consider that record. But we considered it. I mean, it was in our opinion. I think it is entirely unclear what this Court considered with regard to the stay because it does say allegations, and that's referring to the complaint. And those allegations in the complaint did not dispose of the stay. So while the Court talks about it in terms of the background of the case, and certainly I'm not saying the information was unknown to the Court, but the Court considered standing as the District Court considered it, which was a facial challenge as opposed to a factual challenge. And that's why we believe it's free for this panel to proceed. The ultimate standing decision here was based on the fact that it was capable of reputation evading review. And the fact that they were not ultimately evicted doesn't seem to affect that. They still could be evicted in some future situation. Well, I believe, Your Honor, that that is the mootness section of the opinion. The standing section of the opinion addresses what was their circumstance at the time the lawsuit was filed. And at the time the lawsuit was filed, the complaint contained allegations. And in fact, those allegations were that the writ required appellants to vacate their home, that they faced a real and substantial risk of being evicted despite a meritorious defense. And those are the allegations that this Court accepted as establishing standing at the time the complaint was filed. However, subsequent proof, when you consider beyond the allegations in the complaint, shows that this was indeed stayed, that there was no reasonable belief that you are about to lose your home, no imminent belief that you're about to lose your home because it was stayed. Now, in front of the District Court, the second go-around, it was up to appellants to explain, through a declaration, how they had actual concrete harm, not just a speculative harm in this case. And they submitted no declarations whatsoever on that subject. So we do respectfully believe that this panel... But you're saying they submitted no declarations after this Court's remand? They submitted no declarations addressed to standing when we moved to dismiss the case. So why would they do that? They had a published Ninth Circuit opinion that said they had standing. It might not have occurred to them to think that they needed to do more. I can only say it would have occurred to me, Your Honor, because that Ninth Circuit case was based on allegations in the complaint, not on declarations. But looking at those allegations, I believe you're free to do that. There's also an additional issue on standing that was not considered by the prior panel, and that's that appellants failed to show that the injury was fairly traceable to the challenged action of the sheriff. Now, the District Court discusses this somewhat below. We discussed this in our appellant brief at 2526, and in response, appellants don't discuss it really at all. And that has to do with the appellant submitted a letter to the King County Superior Court by the June 6th deadline, citing habitability issues and asking for a hearing. As the court is aware, habitability is a defense to rent. She did exactly what the statute requested. And for whatever reason, not proven by plaintiff, even though it's their burden, it is not shown that the injury allegedly faced by appellants was due to the statutory process, as opposed to an error by the Superior Court. Now, that's important in this case, since it comes before this court under Ex parte Young, that the injury, in fact, be traceable to application of the statute as written, not application of the statute as essentially mistakenly implemented by the Superior Court. So that's an entirely separate reason for standing that certainly was not addressed by the last panel. I'd like to turn to the mootness question. And this, I think, in a lot of ways is a very interesting but also dispositive issue, because in the end, the District Court is being asked by appellants to somehow fashion an injunction and declaratory relief addressed to the statute as it existed in 2016. Of course, we all know that you're reviewing the current law, but a lot of the things about the statute that was done in it don't apply. As it existed and continues to exist. For example, the notice provision hasn't changed at all, right? That would be, I would say that that would be an overly narrow reading of the effect of those amendments. Because... I thought Bill said this is the notice that should be sent and quotes it. Well, the thing with procedural due process... I'm sorry, what? I think in answering that question, with procedural due process, it's important to look at the overall context in which that statute operates. So a tenant facing eviction receives not only the 375 notice, which was not amended by the 2019 legislature, but such a tenant also receives an unlawful detainer action summons, which was tremendously amended by the state legislature. These are not arguments about mootness. This is just an argument as to why maybe under the statute as altered, you may have a better defense against these procedural due process challenges. And maybe you do. But that doesn't show that the claim itself is moot when the provision they're pointing to is still in the law. I think with respect, Your Honor, I think that it does lead to a mootness conclusion because of the particular type of challenge that appellants are bringing. Now, if they were bringing a First Amendment challenge and the statute forbidding demonstrations on sidewalks had not changed, clearly that's not moot no matter how differently the room is painted or anything else that happens in a subsequent amendment. But with procedural due process, you have to look at the overall environment in which that statute operates. That's what will happen when the issue is decided, but that doesn't make it moot. I would submit that it does make it moot because the constitutional analysis of that law is inherently different once the context of that statute is changed. So in Matthews, the court said that you have to look at procedural due process as the particular situation demands. Just a question. The fact that it's different, does that make it moot? Yes. It's still an issue as to whether that same exact notice is a valid notice or not a valid notice. Now, the answer might be different than it would have been before, but it doesn't mean there's no case for controversy. I believe that because we're limited to prospective relief only and the standards that go into the actual notice that someone receives is entirely different than it would have been in 2016, that is a change in the law, a substantial change in the law, and because a court... You can address the question we asked you to address. I'm sorry, Ron, I thought I was. I really apologize. You can address the jurisdictional-slash-discretionary issue we asked you to address, i.e., whether we reach the merits or not. I'm sorry, I didn't hear that question. I don't believe you reached the merits. I believe that it is remanded. But I believe that the question on mootness is, has there been a substantial change in the law? And I'm saying there is a substantial change in the law because the requirement for procedural due process is to not focus simply on the narrow confines of 375, but to look at the overall statutory system. All right, you've said that several times. What I'd like to know with regard to the issue that we asked you in our order to address is looking at the prior opinion, he did address the standing issue, and then he addressed merits. Now, the difference, of course, was that in that instance, as I understand it, the standing issue had not been raised in the district court. Is that right? The standing issue was considered as a facial challenge in the district court, not as a factual challenge. That's correct. The standing issue was addressed as a... How do you address a standing issue as a facial challenge? Under 12B1, based on the allegations in the complaint alone, versus considering declarations. Did the district court in the first go-around decide a standing issue? The district court. Now, I'm not concerned. Solely on facial grounds, yes. The conclusion was that there was standing or there wasn't standing. The district court decided facially that there was not. I'm actually not sure of that, Your Honor, because the district court decision in the first go-around didn't necessarily dictate the appeal. One oddity of this case is that the client seemingly has no substantive interest in the act. Your client is the sheriff who is merely trying to follow whatever the rules are, and you've said in your brief that you don't actually take a position on the merits, but the state... Where is the state? Was the state not a part of this case below on remand? The state declined to participate on remand, Your Honor. Is there anything on the record as to why that is? No, there's not. And that has made it difficult. To go back to my question, as far as I can tell from the earlier opinion, there was no standing issue the first time around in the district court. It wasn't raised in the district court, or at least it wasn't decided. The district court only decided to dismiss the case on his reading of the statute. I believe that's correct. That refreshes my recollection. I'm looking forward to it. It totally confuses me. All right. Then what I want you to go on to observe is that we, however, did address the standing issue. It's a jurisdictional issue, so we have to... And then we addressed the merits. Now, in terms of the remand, the only difference between this case and that case is that the district court did address the standing issue, and it also addressed the merits. So it seems, despite what I said before, and even though I think we probably should remand, it does seem a little peculiar that we reached the merits after deciding the standing issue in the other instance, but we wouldn't do it here. I want to clarify my prior answer. So what happened in the district court the first go-round is we moved to dismiss on standing and mootness, and the district court refused to consider the additional pleadings that we submitted, so it was purely a factual determination, or facial determination. Based on that facial determination, the district court allowed the case to proceed, and that's what came up before the Ninth Circuit. We argued before the Ninth Circuit to affirm on other grounds, arguing that standing should preclude the case going forward. I'd like to talk about the denial of summary judgment not being appealable. The general rule is that summary judgment, of course, is not appealable. There is no exception that this case falls into, and I believe the case cited... Well, the exception is that there was a final judgment. Well, in the normal final judgment case, when you have, say, cross motions for summary judgment, it's common, and I think it's a recognized exception for this court to consider a denial of summary judgment in that context. But in this case, we're talking about a denial of summary judgment in conjunction with a finding for lack of jurisdiction. And that is a significant enough factor that I think the Burke decision from 1979, which was cited in this court's order, controls, and that held that when it's dismissed for lack of subject matter jurisdiction, it does not allow appeal from the denial of summary judgment. And I think that's particularly appropriate in this case because summary judgment was denied based on material issues of fact. So it would be very odd, even in the qualified immunity context, for this court to consider summary judgment, a denial of summary judgment when it was... True in part and not true in part. That was my other question. It was true with regard to the Matthews issue, but not with regard to the notice issue, right? In other words, the district court, on a notice issue, as I understand it, said as a matter of law, you lose on a summary... You lose on that. Since there was no cross motion for summary judgment, he didn't issue summary judgment for the government on that issue, but in effect he did because he said this is a valid notice. On the Matthews issue, he said that there were disputed issues. Even with regard to the notice issue, the district court below noted the question of whether appellants were prejudiced by any deficiencies in the 375 notice when clearly they saw it and they acted upon it. So I don't read that decision as saying as a matter of law that that notice is sufficient, although I suppose... No, it wasn't. Yes, I see. Yeah, so I think ultimately the district court perceived some factual issues there as well. So for these reasons, we would ask the court to affirm dismissal. This is a case where the sheriff is a dinner party that the sheriff does not want to be at. Thank you. Okay, Mr. O'Sullivan. Yes, Your Honor. Just to clarify one of the issues that came up during my friend Mr. Hackett's argument, the issue about whether or not they're standing because the state court misinterpreted Section 375. The Ninth Circuit, again, already addressed this point, and it's in the record in ER 113. You can see the response that the tenant submitted to the notices that they received. It was not sworn under a penalty of perjury. The state court proceeded as it was supposed to under Section 375 unconstitutionally and denied the tenants a hearing based on that statute. So there really is no issue before the court on standing. Those issues have been addressed. With respect to... While I would note that usually the Ninth Circuit does not exercise discretion to consider denial of summary judgment, in a situation like this one, where this is the second time the case has come up on appeal, the Ninth Circuit has already addressed the standing issue. The summary judgment issues have been fully briefed, and as Judge Berzon noted, the district court made a ruling on the notice issue. If this court... I think it would be certainly appropriate for this court to rule on the notice issue under Mullane. And, again, the notice under Section 375 is unconstitutional, and unconstitutional, again, for the same reasons it was in 2016, in that it denies tenants an opportunity for a hearing and doesn't provide them any information on how to get a hearing, even though there are many reasons, other than nonpayment of rent, that would prevent a landlord from evicting a tenant. Those reasons are present in this case, potential offsets, potential reasonable accommodation requests, all of which a tenant would be able to raise in the context of a hearing, if granted under the normal Section 370. So if this court were to find Section 375 unconstitutional, the courts would rely on Section 370 as they do in any eviction case. If a tenant is being evicted for gang activity or for illegal activity or for nuisance, they get a hearing. The only situation in which they don't get a hearing is under 375 when they're being evicted for nonpayment of rent. All we're asking is that this court find that tenants have the same right to a hearing when they're evicted for nonpayment of rent as they do in any other case. Thank you, Your Honors. Thank you both for your helpful arguments. Thank you. Thank you.
judges: Berzon, Miller, Bress